IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:07-CV-195-FL

| | |
|---|---|
| ERNEST HOWARD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **MEMORANDUM** |
| v. ) | **AND** |
| ) | **RECOMMENDATION** |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the Court on the parties' cross motions for judgment on the pleadings pursuant to FED. R. CIV. P. 12(c). Claimant Ernest Howard ("Claimant") filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the denial of his application for a period of disability, disability insurance benefits ("DIB") and supplemental security income ("SSI") payments. The time for filing responsive briefs has expired and the pending motions are ripe for ruling. Having carefully reviewed the administrative record and the motions and memoranda of the parties, the court recommends that Claimant's motion for judgment on the pleadings be denied, Defendant's motion for judgment on the pleadings be granted, and the final decision of the Commissioner be upheld.

## STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability, DIB and SSI payments on December 15, 2004, alleging disability beginning September 1, 2004. (R. 15, 55-57, 260-83). After Claimant's application was denied initially and upon reconsideration, he requested a hearing before an Administrative Law Judge ("ALJ"), which occurred April 16, 2007. (R. 15, 263-83). At the hearing, Claimant amended his disability onset date to January 1, 2005. (R. 15, 266). The ALJ issued a decision denying Claimant's claims on April 27, 2007. (R. 12-21). The Appeals Council

denied Claimant's request for review on October 26, 2007, rendering the ALJ's decision a "final determination" for purposes of judicial review. (R. 6-8). Claimant has timely commenced the present action pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

In its consideration of a final agency determination, this Court is to remain mindful of the standard by which it reviews the administrative decision. *See e.g., Evans v. Eaton Corp. Long Term Disability Plan*, 514 F.3d 315, 320-21 (4th Cir. 2008) (citations omitted) (explaining standards of review are an expression of judicial restraint safeguarding the "superior vantage points of those entrusted with primary decisional responsibility."). With respect to the judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, review is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner...as to any fact, if supported by substantial evidence, shall be conclusive..." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla...and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Rather, in conducting the "substantial evidence" inquiry, the court's

2

review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520 and 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," *i.e.*, currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform his past work or (5) any other work.

*Albright v. Commissioner of the SSA*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

In this case, Claimant alleges the following errors by the ALJ: (1) penalizing Claimant for his inability to afford medical treatment; (2) improperly evaluating Claimant's credibility; (3) finding that Claimant could perform light work with a sit and stand option; and (4) improperly considering the type and side effects of Claimant's medication. Pl.'s Mem. of Law at 2-3. [DE-16] ("Pl.'s Mem.").

## STATEMENT OF THE FACTS

### I. The Findings by the ALJ

Applying the above-described sequential evaluation process, the ALJ found Claimant "not

3

disabled" as defined in the Act. (R. 17). At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. *Id.* Next, the ALJ found that Claimant had a severe impairment of lumbar degenerative disc disease. *Id.* However, at step three, the ALJ determined that Claimant did not have an impairment or combination of impairments that were sufficiently severe to meet or medically equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* Next, after considering all of Claimant's subjective complaints and the entire medical record, the ALJ determined that Claimant has the residual functional capacity ("RFC") to perform light work with the ability to alternate between sitting and standing.[1] (R. 18-19). At step four, the ALJ explained that Claimant is unable to perform any of his past relevant work. (R. 19-20). At step five, considering Claimant's age, education, work experiences, and RFC, the ALJ determined that jobs exist in significant numbers in the national economy that Claimant can perform. (R. 20-21). The ALJ determined that Claimant's ability to perform a full range of light work was impeded by additional limitations, and that in order to determine the extent of erosion of the light occupational base caused by these limitations, the ALJ consulted a vocational expert ("VE"). (R. 20). The VE testified that Claimant could perform the job requirements of the following representative occupations: small products assembler, cashier II and garment sorter. (R. 20-21). The ALJ concluded Claimant has not been under a disability as defined in the Social Security Act from the alleged disability onset date through the date of the administrative decision. (R. 15, 21).

## II.  Claimant's Testimony at the Administrative Hearing

At the time of the administrative hearing, Claimant was forty years old and resided in

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. 20 C.F.R.§§ 404.1567(b) and 416.967(b).

4

Greenville, North Carolina. (R. 267). Claimant testified that he had completed the eleventh grade and had no further education. (R. 267-68). Although not married, Claimant lived with a roommate. Claimant testified that he liked to read books, magazines and newspapers. (R. 268).

Claimant has not worked since becoming disabled on January 1, 2005. *Id.* His most recent job was that of a material handler. *Id.* As a material handler, Claimant was required to lift forty to fifty pounds throughout the day. (R. 269). Claimant's past work experience also includes positions as a metal presser, machine operator or material handler, all of which required him to lift in excess of twenty pounds. (R. 269-70).

The last time Claimant was admitted to the hospital was March 2005 for treatment related to his lumbar fusion. (R. 270). Claimant stated that he has not seen a physician since February 2007 because he did not have any money. *Id.* While Claimant is currently taking the prescribed medications of Lidoderm, Neurontin, Oxycodone, and Hydrodone, Claimant testified that he takes this medication on an 'as needed' basis, not in the amount or with the frequency as prescribed, because he must pay out-of-pocket for his medication and cannot afford his medicine. (R. 270-71).

Claimant testified that his medical problems are related to his back, leg and hip, and that he is limited in his ability to stand, bend and lift because of back pain. (R. 271-72). Claimant indicated further that he has trouble bending from the waist and must instead bend from his knees. (R. 279). He described his pain as constant and testified that pain radiating from his leg to his left hip. (R. 271-72).

Claimant testified that he had undergone physical therapy to treat his pain but that he can no longer afford to pay for this type of treatment. (R. 271). While Claimant does not need a cane to ambulate, he wears a back brace prescribed by a physician, which helps to relieve his pain. (R. 272).

5

Claimant said he wears the brace when he walks which is about three times a week for a period of up to forty-five minutes. *Id.*

Claimant testified further that in addition to taking medication to relieve his pain, he performs exercises at home that were suggested to him by his physical therapist. *Id.* His physical therapy regimen includes walking three times per week for forty-five minutes, and performing back leg raises which also relieve his pain. *Id.* Claimant said that he can walk twenty to thirty minutes without stopping and that he can stand for twenty minutes and can sit for thirty minutes. (R. 273).

As for lifting, Claimant testified that he experiences pain when he lifts ten to fifteen pounds and that he has been placed on lifting restrictions by Francis Buckman, M.D., a treating physician, advising him not to lift over ten to fifteen pounds. (R. 273-74).[2]

As for daily activities, Claimant testified that since his surgery he does a little cooking, not requiring him to stand over the stove, but that he is not able to perform any other chores. (R. 274). He testified that he does "a good bit" of going to the store and visiting friends. (R. 274-75). For example, most of the time he goes to Wal-Mart, he is with someone else and he remains at the front of the store, seated on a bench. (R. 278). At the grocery store, Claimant will walk around the store while his roommate shops, pushes the cart and unloads the grocery bags. (R. 278-79).

When he is in pain, Claimant lays down or performs his physical therapy exercises which relieve the pain most of the time. (R. 275). He spends most of the day on the couch at home, and has difficulty sleeping at night, getting no more than five hours of sleep. (R. 275-76). He said the side-effects of his medication include drowsiness and dry-mouth and that he sleeps one to two hours

---

[2] No lifting restrictions on Claimant are indicated in the medical record by Dr. Buckman or any other healthcare provider.

as a result of the fatigue caused by medication. (R. 276-77).

Claimant testified that he takes his medication when his pain level reaches "eight" or "nine" which is not always. (R. 277). Claimant tries to avoid taking his pain medication daily because he cannot afford more. *Id.* However, if he were able to afford his medication, Claimant explained he would take his medication as prescribed. *Id.*

Claimant testified that he received medical treatment through the Cares Program at East Carolina University ("ECU") and that he was able to afford treatment at ECU because the cost of doctor visits was only $5.00, an amount which he was able to borrow from a friend. (R. 278). Claimant's treatment at ECU however does not allow him to see an orthopedist and he must pay "out-of-pocket" to see a specialist. *Id.* Although his participation in the Cares Program expired in March 2007, Claimant is able to requalify for the program and receive medical treatment. *Id.*

### III. Testimony of the Vocational Expert

Certified Rehabilitation Counselor Stephen D. Carpenter, M.Ed. (Rehabilitation Counseling) testified as a VE at the administrative hearing without objection. (R. 103-07, 279-82). After the VE's testimony regarding Claimant's past work experience (R. 280), the ALJ posed the following hypothetical:

> I want you to assume a hypothetical individual the same age, education and work background as that of the [C]laimant. And I want you to further assume this hypothetical individual retains the capacity to engage in light work as that term is described in the Dictionary of Occupational Titles ["DOT"] except for this individual will need the ability to alternate sit and stand approximately 30 minutes at a time. But should also avoid any frequent postural activities like stooping or squatting or otherwise. Could that individual engage in any of the [C]laimant's past relevant work?

*Id.* The VE responded in the affirmative, indicating that the individual described in the hypothetical could perform the following jobs classified in the DOT: Auto Parts Machine Operator or Assembler

7

of Small Products I, as generally performed, and classified in the DOT. (R. 280-81). The VE testified further that the hypothetical individual could perform the jobs of Assembler (DOT Code 712.687-010), an unskilled position with a light exertional level and an SVP of 2; Cashier II, (DOT Code 211.462-010), an unskilled position with a light exertional level and an SVP of 2; Garment Sorter, (DOT Code 222.687-014), an unskilled position with a light exertional level and an SVP of 2. With respect to each of these positions, the numbers of individual performing this job in North Carolina range from greater than 5,000 to multiple thousands, and more than 500,000 nationally. (R. 281).

The VE testified further that if the individual described in the hypothetical had the limitations alleged by Claimant, the individual would not be able to engage in the jobs described by the VE, nor would there be any jobs available for such an individual. (R. 281-82). Specifically, the VE stated that if the hypothetical individual needed to lie down frequently during the day and take unscheduled breaks such an individual would not be able to meet any type of performance or attendance standard in any job. (R. 281).

As for any conflict between his testimony and the DOT, the VE stated that while the DOT does not address directly the sit and stand option, based on his experience, the available jobs described by the VE would allow for a this option. (R. 282).

## DISCUSSION

**I.    Substantial evidence supports the ALJ's determination of Claimant's credibility.**

The Court combines Claimant's first, second and fourth assignments of error as each is a challenge to the ALJ's credibility finding. Claimant contends the ALJ failed to adequately evaluate the credibility of Claimant's testimony. Pl.'s Mem. at 3-5, 7-8. In particular, Claimant contends the

8

ALJ (a) inaccurately summarized the evidence relevant to Claimant's testimony; (b) penalized Claimant for failing to continue medical treatment which he allegedly could not afford; and (c) failed to document the medication taken by Claimant and the side effects thereof. *Id.*

Upon establishing the existence of a medically-determinable physical or mental impairment that could reasonably be expected to produce the claimant's symptom(s), the ALJ must evaluate the intensity, persistence and limiting effects of said symptom(s) on a claimant's ability to perform basic work. 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1); Soc. Sec. Rul. ("S.S.R.") 96-7p, 1996 WL 374186, at *1; *see Craig*, 76 F.3d at 595. This evaluation requires the ALJ to determine the degree to which the claimant's statements regarding symptoms and their functional effects can be believed and accepted as true; thus, the ALJ must consider conflicts between the claimant's statements and the rest of the evidence. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4); S.S.R. 96-7p, 1996 WL 374186, at *4. A claimant's symptoms, including pain, are considered to diminish her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4). In assessing credibility, the ALJ must consider the entire case record, provide specific reasons for the credibility finding and ensure the weight accorded (and reasoning for said weight) to the claimant's statements is evident to the claimant and any subsequent reviewers. S.S.R. 96-7p, 1996 WL 374186, at *4; *see Ketcher v. Apfel*, 68 F. Supp. 2d 629, 652 (D. Md. 1999); *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). In addition to the objective medical evidence, the ALJ's evaluation of a claimant's credibility must include the following factors:

(1) effect of symptoms on claimant's daily activities
(2) location, duration, frequency and intensity of the symptom(s)
(3) factors that precipitate or aggravate claimant's symptoms

9

(4) type, dosage, effectiveness and side effects of medication taken to alleviate the symptom(s)
(5) non-medical treatment received for relief of the symptom(s)
(6) any non-treatment measures used to relieve the symptom(s)
(7) other factors concerning functional limitations and restrictions due to the symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); S.S.R. 96-7p, 1996 WL 374186, at *3; *see Hyatt v. Heckler*, 711 F. Supp. 837, 848 (W.D.N.C. 1989), *aff'd in part, amended in part, vacated in part*, 899 F.2d 329 (4th Cir. 1990).

After reviewing the ALJ's decision, this Court finds the ALJ made the necessary findings in support of his credibility determination pursuant to the framework explained above. *See Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (an ALJ's observations regarding credibility should be given great weight). Regarding objective evidence, the ALJ summarized Claimant's medical records and noted the modest findings on diagnostic testing. (R. 18). In addition to the objective medical evidence, the ALJ also considered the factors set forth in 20 C.F.R. § 404.1529(c)(3) and 416.929(c)(3) as referenced above. *See* S.S.R. 96-7p, 1996 WL 374186, at *6 ("[T]he absence of objective medical evidence supporting an individual's statements about the intensity and persistence of pain or other symptoms is only one factor that the [ALJ] must consider in assessing an individual's credibility and must be considered in the context of all the evidence."). In particular, the ALJ's decision cites the following testimonial evidence in evaluating Claimant's credibility: (1) Claimant's daily activities, including walking to Wal-Mart, visiting friends and light cooking; (2) Claimant's limited treatment for lower back pain; (3) Claimant's increase in back pain with prolonged sitting; (4) Claimant's limited medical treatment and non-daily use of pain medication; and (5) Claimant's ability to walk with the use of a back brace three times a week for forty-five minutes with a break

10

after 20-30 minutes. (R. 19).

   a.   *The ALJ's summary of Claimant's testimony*

Claimant disputes the ALJ's summary of Claimant's testimony and the reliance upon inaccurate testimony in the ALJ's credibility analysis. Pl.'s Mem. at 5. First, with respect to Claimant's frequency of treatment and use of pain medication, Claimant faults the ALJ for failing to acknowledge Claimant's "inability to afford" treatment explanation. *Id.* As discussed below, the Court finds Claimant's extensive treatment belies his argument that he was unable to afford medical treatment.

Second, Claimant contends he never testified to an ability to walk for forty-five minutes with a break after twenty to thirty minutes on a continuous basis during an eight-hour workday. *Id.* During the administrative hearing, Claimant stated that he wears a back brace when he walks which is approximately three times per week for up to forty-five minutes and that he does not need a cane to ambulate. (R.271-72). He said further that he cannot walk forty-five minutes without stopping but must stop for twenty to thirty minutes, approximately. (R.273). Accordingly, the Court finds that the summary provided by the ALJ along this line of questioning is a reasonable interpretation of Claimant's testimony.

Next, Claimant points out that the ALJ noted incorrectly that Claimant testified to walking to Wal-Mart. Pl.'s Mem. at 5. Rather, Claimant testified that "[m]ost of the time when I go to Wal-Mart with somebody I sit at the front of the checkout place." (R. 278). However, Claimant also testified to "walk[ing] around the grocery store." (R. 279). Accordingly, the Court finds any reliance by the ALJ on this error to be harmless.

Finally, Claimant contends the ALJ's notation that Claimant "does a little cooking" is an

11

inaccurate statement. Pl.'s Mem. at 5. In particular, Claimant notes that he testified to doing "a little cooking that don't (sic) require me to stand over the stove, but I walk back and forth as far as cooking." (R. 274). Claimant does not indicate how the additional testimony regarding his cooking activities impacts the ALJ's decision. Moreover, the ALJ's finding that Claimant must have an ability to alternate between sitting and standing indicates the ALJ found Claimant incapable of standing for lengthy periods of time.

b. *Claimant's "inability to afford" treatment allegation*

The ALJ noted that the record indicated infrequent medical visits since February 2007 and that Claimant testified to not taking pain medication daily. (R. 19). As to these two points, Claimant contends the ALJ improperly penalized Claimant for failing to seek treatment that he could not afford. Frequent medical visits "generally lend support to an individual's allegations of intense and persistence symptoms." S.S.R. 96-7p, 1996 WL 374186, at *7. In contrast, however,

> [An] individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints.... However, the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment.

*Id.* The inability to afford medical treatment is a sufficient reason for infrequent medical visits. S.S.R. 96-7p, 1996 WL 374186, at *8; *see also Lovejoy v. Heckler*, 790 F.2d 1114, 1117 (4th Cir. 1986) (holding it was improper to consider a disability claimant's failure to seek treatment in determining whether an impairment was severe when the failure was justified by lack of funds).

There is evidence in the record that on occasion Claimant encountered difficulty in obtaining medication due to cost. Dr. Buckman's September 14, 2006 progress note indicates that Claimant

12

had financial constraints and was unable to afford a co-payment for medication. (R. 224).[3] It appears however on this occasion that Dr. Buckman changed Claimant's medication so that Claimant could obtain a prescription. *Id.* A record from Dr. Buckman dated December 5, 2006 indicates that Claimant was unable to fill a prescription for Lidoderm (a pain reliever) because of costs and that his prescription for Ultram (a pain reliever) was cancelled for the same reason. (R. 214-15). The record indicates however that Claimant advised Dr. Buckman that Percocet was more effective and based on this preference, Claimant was prescribed Percocet and Valium and referred to physical therapy. (R. 214).

Despite these difficulties, the overwhelming weight of the record shows however that Claimant had considerable access to both medical treatment and medication. *See Mickles v. Shalala*, 29 F.3d 918, 930 (4th Cir. 1994) (explaining no error by ALJ in finding claimant not credible despite claim of inability to afford medical treatment where claimant was found to have access to medical attention and little difficulty in obtaining medication); *see also Wooten v. Shalala*, 998 F.2d 1012 (table), 1993 WL 269267, at **4 (4th Cir. Jul. 16, 1993) (explaining the ALJ did not penalize claimant for the alleged inability to afford medication where it was not clear from the record that claimant could not afford medical treatment). The record shows indeed that Claimant received extensive medical attention related to his back, legs and hip pre-dating the amended disability onset date through 2007 just prior to the administrative hearing. (R. 118-38, 147-51, 160-241). Over the course of the relevant time period, Claimant received medical treatment from the clinic at ECU (R. 127-38, 212-255) and from an orthopedic specialist (R. 147-51, 160-81, 182-95, 198-205) and

---

[3] Records from August 10, 2006 indicate that Claimant reported he was unable to fill a prescription of Fentanyl, a pain relief medication, without explanation, and that Claimant was encouraged to have his prescriptions filled. (R. 228-29).

13

underwent physical therapy. (R. 163-66, 172). Furthermore, Claimant's medical records reveal that during most of his appointments, he was prescribed medication and was reported to be taking his medication *as directed.* (R. 127, 132, 134, 223, 227, 235, 248); *see Mickles*, 29 F.3d at 930. Finally, unlike the claimant in *Lovejoy*, relied upon by Claimant, in which it was uncontradicted that the claimant could not afford certain treatment, *see Lovejoy*, 790 F.2d at 1117, the record here includes substantial evidence supporting a finding that medical care more consistent with the alleged severity of Claimant's conditions was available to but not sought by Claimant. *See Mickles*, 29 F.3d at 930 (explaining an unexplained inconsistency between the claimant's characterization of the severity of his condition and the treatment sought to alleviate that condition is highly probative of the claimant's credibility). Accordingly, the ALJ properly considered the treatment Claimant sought and received in determining the weight to accord Claimant's allegations of pain. *See id.*

    c.    *The ALJ's failure to document the medication taken by Claimant and the side effects of said medication*

Claimant next contends that the ALJ erred in his RFC assessment of Claimant by failing to document the specific medication taken by Claimant and to consider the side-effects of said medication to which he testified at the administrative hearing. Pl.'s Mem. at 7-8. Specifically, Claimant testified that he experiences nausea, dry-mouth and fatigue as a result of the medication he takes. (R. 276-77).

The ALJ is not required to discuss all evidence in the record. *See, e.g., Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (explaining there "is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision"); *Piney Mountain Coal Co. v. Mays*, 176 F.3d 753, 762 n.10 (4th Cir. 1999) (ALJ need not discuss every piece of evidence in making credibility

14

determination); *Anderson v. Bowen*, 868 F.2d 921, 924 (7th Cir. 1989) (noting "a written evaluation of every piece of testimony and submitted evidence is not required"). Rather, the ALJ must "provide [this Court] with sufficient reasoning for determining that the proper legal analysis has been conducted." *Keeton v. Dept. of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *see also Coffman*, 829 F.2d at 517. Here, the ALJ's summary of Claimant's medical record "enable[s]...[this Court] to conclude that [the ALJ] considered her medical condition as a whole." *Dyer*, 395 F.3d at 1211.

In particular, while the ALJ did not provide the names of the pain medication taken by Claimant, the ALJ did note the use of pain medications by Claimant subsequent to his back surgery. (R. 18). Also, the ALJ noted the requirements of S.S.R. 96-7p and 20 C.F.R.§§ 404.1529 and 416.929 in considering the side effects of any medication and indicated further that he considered the entire record. (R. 18-19). The ALJ did not discuss with specificity the alleged side-effects of Claimant's medication. However, there is no indication in the record that Claimant reported to his physicians the side-effects he has described in his hearing testimony. Furthermore, despite Claimant's allegations, the record does not contain any functional limitations resulting from the alleged side-effects of his medications. In fact, any analysis of his functional capacity contained in the record reveals that Claimant is quite capable of performing light work as determined by the ALJ. (R. 139-46, 152-59). Without having established any significant functional limitations resulting from the medications he has taken, any error by the ALJ in failing to address explicitly the side-effects from Claimant's medication is harmless. *See Johnson v. Barnhart*, 434 F.3d 650, 658 (4th Cir. 2005) (citations omitted); *see also McKinney v. Astrue*, 2008 WL 754109, at *18 (S.D. W. Va. Mar. 19, 2008) (citations omitted).

The ALJ considered Claimant's alleged symptoms to the extent they were credible. Specifically, the ALJ found Claimant's degenerative joint disease limited him to light work despite state agency physical RFC assessments indicating Claimant could perform medium work. (R. 18, 139-46, 152-59). In short, the ALJ comported fully with the credibility evaluation prescribed by Social Security Ruling 96-7p by making findings, supported by reasons, with respect to Claimant's alleged symptoms, the medical record and Claimant's own testimony. *See Mickles*, 29 F.3d at 929 ("Subject only to the substantial evidence requirement, it is the province of the [ALJ], and not the courts, to make credibility determinations."). For the foregoing reasons, Claimant's argument as to this issue is without merit.

## II. The ALJ properly evaluated Claimant's RFC.

Claimant contends that the ALJ's RFC determination is not supported by substantial evidence. Pl.'s Mem. at 6-7. Specifically, Claimant contends that the ALJ erred in finding that Claimant is able to perform light work with a sit and stand option. *Id.*

The RFC is an administrative assessment of "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis" despite impairments and related symptoms. S.S.R. 96-8p, 1996 WL 374184, at *1; *see also* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In determining the RFC, the ALJ considers an individual's ability to meet the physical, mental, sensory and other requirements of work. 20 C.F.R. §§ 404.1545(a)(4), 416.945(a)(4). It is based upon all relevant evidence and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); *see also* S.S.R. 96-8p, 1996 WL 374184, at *5. Finally, the RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be

accepted as consistent with the medical and other evidence." SSR 96-8p, 1996 WL 374184, at *7.

As discussed above, the ALJ's opinion provides a review of the medical findings by numerous physicians, none of which supports Claimant's assertion that he is incapable of working. (R. 18). In fact, Claimant's treating orthopedist determined that Claimant appeared to be capable of returning to "a light duty position" (R. 182), a finding comporting with the ALJ's RFC determination. (R. 18). The ALJ's assessment also includes statements by Claimant found to be credible. (R. 27); *see Hines*, 453 F.3d at 565 (noting that the ALJ need not accept Claimant's subjective evidence to the extent it is inconsistent with the available evidence). While two state agency consultants found Claimant had the RFC to perform medium work with an ability to sit and stand for six hours in an eight hour workday (R. 140, 153), the ALJ only found Claimant capable of performing light work with the ability to alternate between sitting and standing. (R. 18).

Based on the foregoing, this Court finds that the ALJ's RFC determination is supported by substantial evidence. The ALJ analyzed all of the relevant evidence, sufficiently explained his findings and his rationale in crediting the evidence and applied the correct legal standards in evaluating Claimant's RFC. Accordingly, Claimant's argument as to this issue is without merit.

## CONCLUSION

For the reasons stated above, this Court RECOMMENDS Claimant's Motion for Judgment on the Pleadings be DENIED, Defendant's Motion for Judgment on the Pleadings be GRANTED and the final decision of the Commissioner be upheld.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have ten (10) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District

Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

This, the 16th day of September, 2008.

_____
Robert B. Jones, Jr.
United States Magistrate Judge